[Civ. No. 1729. Fourth Appellate District.—July 15, 1935.]

LOS ANGELES BREWING COMPANY (a Corporation), Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and G. Ellsworth Meyer, Deputy City Attorney, for Appellants.

Hanna & Morton for Respondent.

J. Leroy Johnson, as *Amicus Curiae* on Behalf of Appellants.

MARKS, J.—This is an appeal from a judgment permanently enjoining defendants from attempting to impose upon and collect from plaintiff a license tax upon its business of manufacturing beer and distributing beer, wines and liquors within the City of Los Angeles.

Plaintiff is a domestic corporation with its principal place of business in the City of Los Angeles, and prior to December 6, 1933, had been engaged in the business of manufacturing and distributing beer having an alcoholic content of more than one-half of one per cent and not more than three and

two-tenths per cent by weight which is equal to four per cent by volume. Prior to December 6, 1933, it had obtained licenses under the provisions of two excise tax laws passed by the legislature. (Stats. 1933, pp. 340 and 625.) On that date it obtained several licenses under the provisions of a third act of the legislature which then became operative. (Stats. 1933, p. 1697.) It then obtained from state authorities licenses permitting it to carry on the following businesses: "Off sale" beer and wine license, "off sale" license for liquor other than beer or wine, wholesale dealer's license for liquor other than beer or wine, wholesale dealer's license for beer and wine, brewery license, importer's license, and proceeded to engage in such businesses. All these licenses were in full force and effect at the time this action was instituted.

The City of Los Angeles is and has been a municipal corporation organized under a freeholders' charter which reserved to the City the control of its municipal affairs. (Stats. 1925, p. 1024 et seq., as amended.) The individual defendants are officers of the City of Los Angeles to which we will refer as the City.

Since 1926 there was in full force and effect the City's ordinance No. 56,600, which provided for the licensing of certain professions, trades, callings, occupations and businesses within the City and imposing a license tax upon them. This ordinance contained a penal clause which provided penalties for those violating its terms. On August 22, 1933, the city council passed, and the mayor approved, ordinance No. 72,-975, which amended section 35 of the license ordinance and imposed license taxes on distributors of alcoholic liquors within the City. The pertinent terms of this amendatory ordinance and their effect prior to December 6, 1933, are sufficiently set forth and discussed in the case of *Los Angeles Brewing Co.* v. *City of Los Angeles,* bearing our Civil Number 1720 (*ante,* p. 379 [48 Pac. (2d) 65]), so those matters need not be repeated here. On December 5, 1933, the city council passed another ordinance again amending section 35 of the general license ordinance. This amendatory ordinance was approved by the mayor on December 6, 1933, and in the usual course would have gone into effect on January 5, 1934. This ordinance contained the following provisions: "Each and every person conducting, managing and/or carrying on the business of selling or offering for sale alcoholic liquor in

the City of Los Angeles shall pay a license fee or tax based upon the gross receipts of such business as follows:

"On sale dealer .................................$30.00
    For each $10,000 of gross receipts or fraction thereof, semi-annually..

Off sale beer and wine dealer...................... 15.00
    For each $10,000 of gross receipts or fraction thereof, semi-annually.

Off sale liquor dealer ........................... 60.00
    For each $10,000 of gross receipts or fraction thereof, semi-annually."

"Each of said classifications shall pay a separate tax or fee. The tax or fee for 'on sale' shall not include the 'off sale'."

On December 14, 1933, plaintiff instituted this action to enjoin defendants from enforcing the provisions of and collecting the license tax imposed by both amendatory ordinances. A temporary injunction was issued which was later made permanent and this appeal followed.

The same questions are presented by counsel here as those decided in *Los Angeles Brewing Co.* v. *City of Los Angeles,* bearing our Civil Number 1720, *supra.* They are sufficiently disposed of in that case so that no further mention need be made of them here. ■ An additional question is presented on this appeal which is of first impression in California, namely, the effect of section 22 of article XX of the Constitution which became operative on December 5, 1933, concurrently with the repeal of the Eighteenth Amendment to the federal Constitution (*Parente* v. *State Board of Equalization,* 1 Cal. App. (2d) 238 [36 Pac. (2d) 437]) on the right of chartered municipalities, which have reserved to themselves control of their municipal affairs, to license the sale of intoxicating liquors within their boundaries.

Section 22 of article XX of the Constitution was again amended at the election held in November, 1934. It is admitted that this amendment effectually took away from all municipalities the right to license the manufacture, disposition or sale of intoxicating liquors. This would seem to render the questions presented here moot as an injunction was issued restraining defendants from enforcing the amendatory ordinances. However, counsel for defendants state that each party has demands against the other and that litigation is pending for the collection of money claimed to be due and

unpaid under the provisions of one or both of the ordinances and for the recovery of money paid under protest. For this reason we have decided to proceed with the consideration of the questions necessarily presented on this appeal.

Section 22 of article XX of the Constitution provides in part as follows: ''The State of California, subject to the internal revenue laws of the United States, shall have the exclusive right and power to control, license and regulate the manufacture and sale, purchase, possession, transportation and disposition of intoxicating liquor within the State, and, subject to the laws of the United States regulating commerce between foreign nations and among the States, shall have the exclusive right and power to control and regulate the importation into and the exportation from the State of intoxicating liquor.''

In presenting their argument in support of their theory that the phrase giving the state the ''exclusive right and power to control, license and regulate the manufacture, sale . . . and disposition of intoxicating liquor within the State'' did not deprive the city of the power to license plaintiff's business for revenue, defendants first urge that the imposition of a license tax may be for the purpose of either raising revenue or for regulation. Of course this is correct. They next point out that the license ordinance is not a regulatory enactment but is solely a revenue measure. The correctness of this statement may be conceded. They then urge that the word ''license'' as used in the quoted phrase means *permit to operate* as distinguished from the power to impose a license tax for the purpose of revenue only as the words ''tax'' and ''revenue'' do not appear in the amendment. From this premise they conclude that the section of the Constitution gives the state exclusive police power over manufacturers and dispensers of liquor with the exclusive power to determine who may manufacture or dispense liquor and when and where such business may be conducted but without the exclusive power to impose a license tax upon the operation of such business.

The phrase ''license and regulate'' has received judicial interpretation from the Supreme Court of California. By an act of the legislature approved March 30, 1872, it was provided that ''the Board of Supervisors of the City and County of San Francisco shall have power, by ordinance, to license

and regulate all such callings, trades, and employments as the public good may require to be licensed and regulated, and as are not prohibited by law, . . . '' The board of supervisors of San Francisco passed an ordinance imposing a license tax on certain businesses conducted within the city. In the case of *Ex parte Frank,* 52 Cal. 606 [28 Am. Rep. 642], it was contended that the power to ''license and regulate'' business given in this act did not include the power to impose a license tax for revenue purposes on such business. The Supreme Court could not approve this reasoning and held the power to ''license and regulate'' business included the power to impose and collect a license tax for revenue. In the case of *San Jose* v. *San Jose etc. Co.,* 53 Cal. 475, and in the case of *Ex parte Braun,* 141 Cal. 204 [74 Pac. 780], similar conclusions were reached. The same question was before the Supreme Court in the case of *In re Nowak,* 184 Cal. 701 [195 Pac. 402], where it was said: ''Petitioner insists that the use of the term 'license and regulate' in defining the power of the city over lawful businesses and occupations, restricts the municipality to the imposition of license taxes for purposes of regulation only, and we are indebted to counsel for a learned and comprehensive analysis of authorities from other jurisdictions in support of this proposition. However persuasive we might find the reasoning of the cases and texts thus called to our attention, had the language in question never received interpretation in this state, we are now bound by previous decisions wherein a grant by the legislature of authority to 'license and regulate' has been held to include authority to impose a license tax for revenue only.'' We therefore conclude that when section 22 of article XX of the Constitution provided that the state ''shall have the exclusive right and power to control, license and regulate the manufacture, sale, purchase, possession, transportation and disposition of intoxicating liquor within the state'' it took away from the political subdivisions of the state the right to impose a license tax for the purpose of revenue upon any such business.

But one other argument of defendants requires special consideration here. They urge that the licensing of businesses within a chartered city for the purpose of revenue has always been held to be a municipal affair. That this was true prior to the operative date of section 22 of article XX of the Constitution is too well settled to need citation of supporting

authority. They cite the following portion of section 6 of article XI of the Constitution: "Cities and towns hereafter organized under charters framed and adopted by authority of this Constitution are hereby empowered, and cities and towns heretofore organized by authority of this Constitution may amend their charters in the manner authorized by this Constitution so as to become likewise empowered hereunder, to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws." Defendants urge that as the power to impose a license tax on business in chartered cities is derived from this section of the Constitution we should not hold that the power to impose a license tax for revenue purposes on those engaged in the manufacture, sale or distribution of intoxicating liquors is vested exclusively in the state but is possessed jointly by the state and those chartered cities which have reserved to themselves control of their municipal affairs.

There is no precise, lasting and inflexible definition of a municipal affair. Changes in the circumstances of life may transfer that which is strictly a municipal affair to-day into something of general state-wide concern to-morrow. See (*Helmer* v. *Superior Court,* 48 Cal. App. 140 [191 Pac. 1001]; *Atlas Mixed Mortar Co.* v. *City of Burbank,* 202 Cal. 660 [262 Pac. 334]; *Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441 [166 Pac. 351].) It is logical to conclude that in adopting section 22 of article XX of the Constitution the people intended to and did change the power to impose a license tax for revenue upon those engaged in the liquor business from a municipal affair to one of general state-wide concern and therefore removed such power from the protection of section 6 of article XI of the Constitution when they gave the state "*exclusive* right and power to control, license and regulate" such business.

It is said in *Winchester* v. *Mabury,* 122 Cal. 522 [55 Pac. 393], that "the fact that the language to be construed here is a part of the constitution of the state, and not a statutory provision, makes no difference. The rules of construction by which the meaning of the language is to be ascertained, and the rights and remedies which grow out of it, are the same, no matter where the language to be construed is found." (See, also, *Boyarsky* v. *Ross,* 123 Cal. App. 267 [11 Pac. (2d)

641]; *Civic Center Assn.* v. *Railroad Com., supra.*) It has been held that where two conflicting statutes or constitutional provisions have been passed on the same subject, that which was last passed must prevail. (*People* v. *Dobbins,* 73 Cal. 257 [14 Pac. 860]; *Davis* v. *Whidden,* 117 Cal. 618 [49 Pac. 766]; *Civic Center Assn.* v. *Railroad Com., supra.*) It has also been held that "it is well settled that statutes bearing upon the same subject matter must, if possible, be construed together, and that a general provision will be controlled by one that is *special*". (*Bateman* v. *Colgan,* 111 Cal. 580 [44 Pac. 238]; *Civic Center Assn.* v. *Railroad Com., supra.*) In point of time section 22 of article XX of the Constitution was passed much later than section 6 of article XI. Section 22 of article XX of the Constitution deals exclusively with the control of, the licensing and regulating the business of manufacturing and dealing in intoxicating liquors. Section 6 of article XI of the Constitution, in so far as the issues of this case are concerned, is general in its terms in giving chartered cities control of all their municipal affairs. As section 22 of article XX was adopted last, as it is special in dealing with this subject of the control, licensing and regulating of "the manufacture, sale, purchase, possession, transportation and disposition of intoxicating liquor within the state" and as it shows an intention to remove the licensing for revenue of those so dealing in intoxicating liquors from the realm of a municipal affair to that of a matter of general state-wide concern, its provisions must be held to control over those of section 6 of article XI of the Constitution and vest in the state the exclusive and sole right to license for the purpose of revenue those engaged in the business of manufacturing, dealing in or handling intoxicating liquors. It follows that the City of Los Angeles had no right to impose a license tax for the purpose of revenue upon the business of plaintiff after the amendment became operative.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.