[L. A. No. 27007. In Bank. Aug. 13, 1963.]

PROFESSIONAL FIRE FIGHTERS, INC., et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES, Defendant and Respondent.

Bodle & Fogel, George E. Bodle, Daniel Fogel, Stephen

Reinhardt and Lawrence Drasin for Plaintiffs and Appellants.

David Ziskind, A. L. Wirin and Fred Okrand as Amici Curiae on behalf of Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Marcus E. Crahan, Jr., Deputy City Attorney, for Defendant and Respondent.

PETERS, J.—Plaintiffs appeal from an adverse judgment entered in an action seeking an injunction and declaratory relief.

Plaintiff Professional Fire Fighters, Inc., is incorporated under the laws of the State of California, and is chartered by the International Association of Fire Fighters, AFL-CIO, as Local 748, with its principal place of business within the City of Los Angeles, and is one of several unions with a membership among the employees of the Los Angeles Fire Department. Plaintiff Wheatley is a member and president of Local 748, and an employee of the fire department. Defendant is a municipal corporation, organized and existing as a charter city.

The local and Wheatley brought this action (the latter suing on his own behalf as an employee, and in his representative capacity on behalf of his fellow employees who are members of the local) for the purpose of determining and enforcing the rights and obligations of the respective parties in respect to the provisions of Labor Code sections 1960 through 1963, inclusive.[1] In their first cause of action plaintiffs alleged that

[1]Those sections provide:

"1960. Neither the State nor any county, political subdivision, incorporated city, town, nor any other municipal corporation shall prohibit, deny or obstruct the right of firefighters to join any bona fide labor organization of their own choice.

"1961. As used in this chapter, the term 'employees' means the employees of the fire departments and fire services of the State, counties, cities, cities and counties, districts, and other political subdivisions of the State.

"1962. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to present grievances and recommendations regarding wages, salaries, hours, and working conditions to the governing body, and to discuss the same with such governing body, through such an organization, but shall not have the right to strike, or to recognize a picket line of a labor organization while in the course of the performance of their official duties.

"1963. The enactment of this chapter shall not be construed as making the provisions of section 923 of this code applicable to public employees."

defendant city discriminated against those employees of the fire department who are members of Local 748 (as more particularly set forth in the pleading), in violation of the sections of the Labor Code, and threatens to continue such conduct unless permanently restrained by injunction. The second cause of action seeks declaratory relief on the basis of an existing pleaded controversy between the parties, in which defendant city contends that the specified code sections are not applicable to it by virtue of its status as a chartered city.

Defendant filed a general demurrer to each cause of action together with an answer denying the charges of discrimination, and affirmatively alleging that neither plaintiff has capacity to sue. The answer to the cause of action for declaratory relief, in addition, alleges that sections 1960 through 1963 of the Labor Code are invalid because of being vague and indefinite and in "conflict with sections 6, 8, 8½ and 13 of article XI of the California Constitution, and with the several provisions of the Charter, laws and regulations of the City of Los Angeles adopted thereunder, and constitute an unlawful and arbitrary interference with the legislative and administrative discretion of the City of Los Angeles and its Board of Fire Commissioners in the organization, control, regulation, supervision and management of its Fire Department and Fire Department employees." The answer further alleges that defendant city, through its Board of Fire Commissioners, has at all times recognized and dealt with Local 748 under and by virtue of sections 15 h and 15 k of rules promulgated by the Board of Fire Commissioners.[2] The prayer of

___

[2]These sections are pleaded in *haec verba* as follows:

"Sec. 15 h. No member shall belong to any organization, association, or society which will in any manner divide his loyalty to the Department, the City of Los Angeles, or the United States of America, or which seeks to subvert any municipal, state, or federal law, rule, policy or regulation of the Department or directive of the Board.

"Sec. 15 k. Organizations and committees of members existing or created for purposes consistent with these Rules and Regulations may apply to the Board for official recognition as representatives of their membership. They may present grievances and complaints or suggestions for the good of the service through the Chief to the Board by delegations of not more than six members. Such grievances, complaints, or suggestions shall be restricted to matters over which the Board has jurisdiction."

The trial court also took notice of section 15 *l*, which reads:

"Members may appeal in writing through channels to the Chief, and file a duplicate copy concurrently with the Board, if they believe they have been unjustly or unfairly treated."

the answer sought dismissal of the cause of action for injunction, and, as to the action for declaratory relief asked that the court either find that there is no actionable controversy regarding the Labor Code sections, or that those statutes be declared invalid and inapplicable to defendant.

Before the demurrer was submitted for decision each party moved for summary judgment, and supported such motion by various declarations. The demurrer and the two motions for summary judgment were argued and submitted together. The trial court determined that all of the issues raised by the pleadings (other than the factual matters set forth in the declarations, as to which there was no dispute) constituted questions of law, and could therefore be determined on the motions for summary judgment. It entered its written ''Conclusions of Law and Judgment,'' a single document. The portion denominated judgment denied the prayer for injunction, and granted both parties declaratory relief by declaring the rights of the parties to be ''those hereinabove specified in the Conclusions of Law, . . . which are incorporated herein by reference, . . .''[3] The conclusions may be summarized as follows:

(a) The plaintiff corporation (Local 748) has no capacity to sue;

(b) Plaintiff Wheatley, as president of Local 748, has no beneficial interest sufficient to give him capacity to sue for injunction; but his status as an employee of the fire department authorizes him to sue on behalf of all other such employees for declaratory relief;

(c) Since plaintiffs' affidavits in support of their motion for summary judgment fail to show any past discrimination or present threat of discrimination against Wheatley, personally, the cause of action for injunction is fatal for lack of proper plaintiff;

(d) Even if Wheatley could properly represent the other fire department employees (as to whom discrimination is claimed in the affidavits) no cause of action for injunction is shown by claim of past discrimination in light of the fact that the uncontroverted affidavits of defendant indicate no threat of discrimination in the future;

(e) Even if a cause of action for injunctive relief were

---

[3]It should be noted that the ''Conclusions of Law and Judgment'' contains a clerical error in that it transposes the fundamental purposes of the first and second causes of action.

otherwise properly shown, it must fail by reason of failure to sue the individual members of the department or board who are alleged in the affidavits to have committed the discriminatory acts;

(f) Even if the law permitted an action for injunction against the Board of Fire Commissioners and its officers, in the name of the city, an injunction may not issue because plaintiffs have failed to exhaust their administrative remedies;

(g) Labor Code, sections 1960-1963, inclusive, are unconstitutional under the provisions of article I, section 21, of the California Constitution (special privileges);

(h) Labor Code sections 1960-1963, inclusive, as well as Government Code sections 3500-3509, inclusive, are inapplicable to defendant by reason of its status as a chartered city, and by further reason of its charter provisions and ordinances, rules and regulations which it has enacted by virtue thereof;[4]

(i) The City of Los Angeles has plenary and exclusive power under the California Constitution, article XI, sections 6, 8, 8½, 12, 13, and article XX, section 16, to govern its own fire department to the exclusion of any and all interference by the state Legislature; and Labor Code sections 1960-1963 and Government Code sections 3500-3509 are not in force as to defendant city;

(j) The rights and obligations of the employees of defendant city's fire department are as set forth in defendant's charter, its ordinances and the regulations promulgated by

---

[4]Government Code sections 3500-3509, enacted in 1961—two years subsequent to the enactment of the Labor Code sections here involved—provide that all public employees (including employees of the state, every governmental subdivision, district, public corporation, town, county, city and municipal corporation), *whether chartered or not,* shall have the right to form, join and participate in employee organizations for the purpose of representation on all matters of employer-employee relations, and to be represented by such organization on all matters pertaining to terms and conditions of employment, including wages and hours. The provisions also require the employing agency to meet and confer with representatives of such organizations, and to refrain from interference or discrimination but authorize the adoption of reasonable rules and regulations for the administration of employer-employee relations, including a method of verifying that any such organization does in fact represent employees. The provisions also authorize the employing agency to designate positions or classes of employees who, by reason of having duties primarily in the field of law enforcement, may be reasonably exempted from the provisions of these code sections. The latter provision is expressly made inapplicable to employees subject to the provisions of Labor Code sections 1960-1963 (i.e., firemen).

its Board of Fire Commissioners (see regulation 15 set forth in footnote 2, above).[5]

These conclusions were expressed at length (covering over 11 pages). The "Memorandum of Decision" covered 50 pages. These conclusions may be considered conveniently in four groups:

(1) Do plaintiffs have the capacity to sue?

(2) Assuming such capacity, have plaintiffs made a sufficient showing in regard to the alleged discrimination in order to avoid summary judgment of their cause of action for injunction?

(3) Do Labor Code sections 1960-1963 create an unconstitutional special privilege?

(4) Are Labor Code sections 1960-1963 (and Government Code sections 3500-3509) inapplicable to defendant by reason of its status as a chartered city and by further reason of its ordinances and regulations enacted under the provisions of its charter?[6]

1. *Plaintiffs' capacity to sue:*

The conclusions of the trial court, summarized as (a) through (c) above, hold that as a matter of law the union has no capacity to sue under either cause of action, that Wheatley has no representative capacity as president of the local, and that although he has such capacity as an employee it does not extend to the cause of action for injunction.

The holding that the union is without capacity to sue is erroneous. The "Conclusions of Law" give no explanation for the ruling so that we are entitled to look to the "Memorandum of Decision" for the basis of this conclusion. (Cal. Rules of Court, rules 5(a) and 5(b)*; 4 Cal.Jur.2d, Appeal and Error, § 307, p. 41.) Therein the court states that "plaintiff corporation has no standing as a party plaintiff *for want of a beneficial interest* sufficient to satisfy Code of

---

[5]The conclusions also deny certain specified rights to plaintiffs and grant other rights to defendant city, none of which need be enumerated here for the reason that such express determinations logically flow from and are predicated upon the conclusion of the trial court that the code sections are not applicable to a chartered city.

[6]Defendant also urged that the Labor Code sections are so vague, indefinite and uncertain as to be unenforceable. The trial court did not accept that contention, and the city's argument of this issue on appeal has no merit, being predicated on the claim that the terms "firefighters" and "bona fide labor organizations" cannot be defined. The point need not be labored that such terms can be and have been defined many times.

*Formerly Rules on Appeal, rules 5(a), 5(b).

Civil Procedure sections 382 and 1086'' (italics added) (citing *Weaver* v. *Pasadena Tournament of Roses Assn.,* 32 Cal.2d 833 [198 P.2d 514], and *Parker* v. *Bowron,* 40 Cal.2d 344 [254 P.2d 6]). The first of the two cited code sections provides that actions may be brought in a representative capacity where the question is one of general or common interest and it is impractical to bring all interested parties before the court. The other section provides that a writ of mandate will issue only on the petition of ''the party beneficially interested.'' The *Weaver* decision held that the plaintiffs therein had no capacity to bring a class action, not because they themselves had no beneficial interest, but because they failed to show that other members of the alleged class had similar interests. The plaintiff in the *Parker* case was held to have no beneficial interest in the subject matter (wages of city employees) where there was no allegation that he was himself a city employee, and his right of representation was alleged to be his position as secretary-treasurer of an *unincorporated* association which claimed to have a membership consisting of city employees.[7] But here, we have no question of an unincorporated association, and no basis for a claim that the class for whom the action was brought is without beneficial interest. None of the authorities relied upon sustains the conclusion that the plaintiff union was without sufficient beneficial interest to bring this action. On the contrary, the plain meaning of both the Labor Code and the Government Code provisions hereinabove alluded to is that unions such as plaintiff may be organized for the sole purpose of representing their members. An action at law on behalf of such members is one form of such representation. Plaintiff is incorporated. Its members are all employees of the fire department and as such have a clear beneficial interest in the subject matter of the complaint. Its interest is joint with theirs. The entire action is one such as is contemplated by Code of Civil Procedure section 382 and (if injunction be equated with mandate) under section 1086 as well.

What has already been said also is applicable to

---

[7]The *Parker* decision logically followed from the then existing rule that an unincorporated association may not sue or be sued as an entity, but that all such action must be taken by or against the individual members. Such rule has since been relaxed in regard to unincorporated labor unions. (See *Marshall* v. *International Longshoremen's & Warehousemen's Union,* 57 Cal.2d 781 [22 Cal.Rptr. 211, 371 P.2d 987], and *Daniels* v. *Sanitarium Assn., Inc.,* 59 Cal.2d 602 [30 Cal.Rptr. 828, 381 P.2d 652].) But here plaintiff is an *incorporated* labor union.

plaintiff Wheatley in his capacity as president of the local. This leaves only the question of whether he may sue in such representative capacity (or in his personal capacity as an employee) for injunction when his own proofs do not indicate past discrimination against him personally. Whether the action be deemed one for injunction (as it is specified in the pleadings) or one for mandate (as the trial court treats it in its memo and judgment), its principal purposes are twofold. The first is to prevent further discrimination against employees of the fire department who are also members of Local 748. The second purpose is to prevent discrimination against the union in the form of preventing or discouraging other employees from joining. Although the affidavits in support of summary judgment may not have shown specific acts of discrimination against Wheatley, personally, they show past acts against other individual members of his union and against the union. Such past acts tend to support the allegation that, if not prevented, defendant will continue to discriminate both against the union and its individual members. Both as an employee and as president of the union Wheatley has a beneficial interest in preventing such future discrimination. His interest as president is obvious. His personal interest lies not so much in defendant's past actions toward other employees as in the threat of similar future actions toward him. It follows that he has both a personal and a representational interest in the subject matter of the cause of action for injunction. It is not denied that his fellow employees have such an interest.

2. *The summary judgment on the cause of action for injunction:*

In its conclusions summarized as (d) through (f), above, the trial court held that there was no triable issue of fact in the cause of action for injunction, and that defendant must have judgment, for the reasons that past discrimination does not include threat of future discrimination, that the city may not be sued to enjoin the actions of its Board of Fire Commissioners, and that it affirmatively appears that plaintiffs have not exhausted their legal remedies.

As already pointed out, the pleadings allege threat of future discrimination, set forth specific acts which are threatened, and further allege that such anticipated discrimination may be avoided only through the injunctive process. In support of its motion for summary judgment defendant filed affidavits which tended to show that it will not discriminate in

the future. In opposition (and in support of their counter-motion for summary judgment) plaintiffs filed affidavits of various employees of the fire department in which it was shown that the department had committed several of the acts of discrimination alleged in the complaint. Among other things, it was shown by the affidavit of the affected employee, that the assistant chief told one member of Local 748 that if he failed to join a specified rival union he would be transferred to a less desirable location; that the employee then joined the rival union; that he subsequently advised the assistant chief that he intended to resign therefrom, and was told by the assistant chief that if he did so, he might as well resign from the department. Other incidents of past discrimination against individual employees and the union were shown (including the fact that the examiner for promotion to captain told each applicant who was a member of plaintiff union that membership in the union represented a conflict of interest with the policies of the department, and would therefore militate against promotion), but they need not be set forth, because they are similar to those already described. The trial court held that past acts of discrimination are not proof of similar future acts, and hence not grounds for injunction. This is unsound, and contrary to the entire theory of injunctive relief. No litigant can ever prove what will happen in the future. Threat of future action can only be inferred from that which occurred in the past. And if such past actions were illegal, and circumstances show that they are likely to reoccur, injunction (or mandate) is a proper remedy. Where, as here, the matter is before the court on motion for summary judgment, it is only necessary to show the existence of a triable issue of fact in order to defeat such motion (Code Civ. Proc., § 437c; *Simmons* v. *Civil Service Emp. Ins. Co.,* 57 Cal.2d 381 [19 Cal.Rptr. 662, 369 P.2d 262]). Whether or not there is a reasonable probability that defendant will continue its discriminatory activities in the future is a question of fact. After making the finding just discussed, the trial court concluded that defendant had a legal right to take the actions of which plaintiffs complained, i.e., such acts were legal—both in the past and in the future—because its charter provisions, ordinances and regulations authorized such actions. This, of course, necessarily implies that unless enjoined the defendant will continue in its course of alleged discrimination.

■ The trial court's conclusion that the cause of action for injunctive relief is fatally defective for failure to sue the individual board members and officials of the fire department is also unsound. The "Memorandum of Decision" first makes the statement that equity acts in personam, and then concedes that section 390 of the Code of Civil Procedure authorizes the Board of Fire Commissioners to be sued in the name of the city, but then concludes that "no cause for injunctive relief against the Board nor any specific officer is made out. . . . [by reason of] failure to show any threatened impending action . . . *nor is any officer or member of the governing body personally before the Court.*" (Italics added.) It is obvious that if the code provisions permit suing the board and its officers in the name of the city, then all proper defendants are before the court.

■ The principal conclusion of law upon which the trial court based its summary judgment in favor of defendant on the cause of action for injunction is that plaintiffs failed to exhaust their legal remedies. The administrative remedies referred to by the trial court (and which the defendant argues at great length in its briefs) are not remedies provided by the state Legislature, but are remedies provided in the charter, ordinances and regulations of defendant city. It is claimed that plaintiffs have not taken all the steps provided by sections 15 k and 15 *l* of the rules promulgated by the Los Angeles Board of Fire Commissioners (see fn. 2, *supra*). Thus, the legal remedies which the trial court would require plaintiffs to exhaust before granting relief herein are the creatures of local enactment which are valid and binding on plaintiffs *only if Labor Code sections 1960-1963 are inapplicable to defendant.* As will be demonstrated below, those code sections are applicable to defendant. This being so, plaintiffs need not comply with the local requirements that are in conflict with the state law.

3. *The question of special privilege:*

■ By its conclusion number 5 (referred to as (g) in the summary of conclusions listed above) the trial court held that "Labor Code sections 1960-1963, inclusive, are void, being in violation of California Constitution, article I, section 21."[8] The court states in its memorandum decision that the

---

[8]That section provides: "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privi-

legislation is *not* invalid by reason of article I, section 11 (which requires all laws of general nature to have uniform operation) for the reason that such constitutional provision is not violated when there is a reasonable or rational classification. Thereby the trial court holds that, insofar as that constitutional provision is concerned, the Labor Code sections in question provide for a reasonable classification. But then, somewhat surprisingly, it concludes (in the same paragraph) that reasonableness of classification is not a proper test in determining validity under the provisions of article I, section 21. No citation of authority is offered for this conclusion. The decisions to the contrary are numerous. ■ A statute which affects all of a single class of persons is not a grant of special privilege or immunity, and hence is not in violation of the provisions of article I, section 21, if the classification is not arbitrary, and is based upon some difference in the classes having a substantial relation to the purpose of the legislation (*Johnson* v. *Superior Court,* 50 Cal.2d 693, 699 [329 P.2d 5]; *McClain* v. *City of South Pasadena,* 155 Cal. App.2d 423 [318 P.2d 199]; *Dribin* v. *Superior Court,* 37 Cal. 2d 345 [231 P.2d 809, 24 A.L.R.2d 864]; *Sacramento M. U. Dist.* v. *Pacific Gas & Elec. Co.,* 20 Cal.2d 684, 693 [128 P.2d 529]).

Defendant, in its briefs, does not attempt to support the trial court's position that a classification which may be reasonable under the provisions of section 11 is nevertheless void under section 21 if it confers rights upon members of one class which are not conferred upon all citizens, but argues that singling out firefighters from all other public employees is, per se, arbitrary, discriminatory, and without reasonable justification. ■ Of course, the authority and duty to ascertain the facts which will justify class legislation lies with the Legislature and not with the courts (*In re Herrera,* 23 Cal.2d 206 [143 P.2d 345]) and the Legislature is vested with a wide discretion in adopting classifications to which any particular statute is made applicable (*Johnson* v. *Superior Court, supra,* 50 Cal.2d 693; *State of California* v. *Indus-*

leges or immunities which, upon the same terms, shall not be granted to all citizens.''

In this same conclusion the court also found that sections 3500-3509 of the Government Code are constitutional only because they *exempt* chartered cities from their operation. Section 3501 of the Government Code expressly provides that the code sections in question apply to all municipal corporations "whether chartered or not."

*trial Acc. Com.*, 48 Cal.2d 365 [310 P.2d 7]), and every presumption is in favor of its validity (*Johnson* v. *Superior Court, supra; In re Herrera, supra*). ▮ In enacting the instant Labor Code sections the Legislature undoubtedly had in mind many logical distinctions between firefighters and other public employees. By Government Code sections 3500-3509, inclusive, it granted to all public employees the right to join labor unions, but therein provided that the employing agencies might except police from the operation of the statute. No one can doubt that the denial of the overall benefits to the police was a reasonable denial of benefits and privileges to a class of persons charged with duties which might be inimicable to union membership. At the same time the Legislature stated (Gov. Code, § 3508) that firefighters should not be subject to the same exceptions as provided in the case of police. Realizing that the duties of firefighters differed sufficiently from those of public employees in general, and yet not sufficiently to except them *in toto* from the benefit of organization, the Legislature set forth their rights and obligations in a similar (but slightly different) legislative enactment (Lab. Code, §§ 1960-1963). It cannot be said that the distinctions therein are any more arbitrary or without reasonable basis than the many other legislative distinctions predicated upon specific occupations. ▮ The arguments of defendant fail to recognize the rule that, when a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification (*People* v. *Western Fruit Growers*, 22 Cal.2d 494 [140 P.2d 13], and cases cited therein at p. 507). Such burden was not met on the summary judgment proceedings here involved.

4. *Applicability of the statutes to defendant as a chartered city:*

▮ In its judgment declaring the respective rights and obligations of the parties (summarized above as conclusions (h), (i) and (j)) the trial court held that neither the Labor Code provisions (§§ 1960-1963) nor the Government Code provisions (§§ 3500-3509) are applicable to defendant. That conclusion is predicated upon the dual proposition that the California Constitution gives charter cities exclusive plenary power with respect to all municipal affairs, including matters

of public employment,[9] and that defendant city has exercised those powers in a manner inconsistent with the code provisions. There is no question but that defendant's charter provisions, ordinances and regulations are inconsistent with the provisions of the code sections,[10] and that one or the other

[9]The constitutional provisions upon which the trial court (and defendant) relied are sections 6, 8, 8½, 12 and 13 of article XI, and section 16 of article XX of the California Constitution. Those sections provide, respectively, that: (1) chartered cities are empowered to make and enforce all laws and regulations in respect to municipal affairs, subject only to the limitations contained in their own charters; (2) when such a charter is adopted and approved by the Legislature it supersedes all general law inconsistent therewith; (3) the various boards and commissions created by such charters (or by ordinances adopted pursuant to power granted in such charters) shall be autonomous and free from interference by the state Legislature; (4) the state Legislature is without power to impose taxes on cities or the inhabitants thereof for municipal purposes; (5) the state Legislature may not delegate to any special commission the power to control municipal affairs; and (6) a charter provision with reference to the tenure of office of a municipal employee shall control.

[10]Both from the showing made upon motion for summary judgment and by way of judicial notice the trial court noted the existence of the following facts: (1) the Los Angeles charter (approved by the Legislature on January 22, 1925) provides, among other things, that the city shall have the power to ''make and enforce all laws and regulations in respect to municipal affairs,'' to ''exercise the fullest measure of local self-government not in conflict with the Constitution and laws of the State of California,'' to ''establish offices, departments, procedures, procedure ordinances, . . . or other instrumentalities for municipal government . . . and any such procedure ordinance shall be additional or alternative to any procedure established by state law,'' to provide by ordinance for the appointment of officers other than those designated in the charter, and to ''provide by ordinance the duties of all boards or officers whose duties are not defined by . . . [the] charter, . . .''; (2) that the charter also creates a fire department as one of the departments of the city, to be under the control and management of a board of five commissioners who shall have the power ''to supervise, control, regulate and manage the department and to make and enforce all necessary and desirable rules and regulations therefor . . . [and to] appoint and . . . remove a . . . chief administrative officer . . . [who] shall have the power and duty . . . [t]o administer the affairs of the department . . . [and] [t]o appoint, discharge, suspend, or transfer the employees of the department, . . . and to issue instructions to . . . [them] in the line of their duties,'' subject to the Civil Service provisions of the charter; (3) the charter also establishes a detailed Civil Service system; (4) the charter also establishes a Fire Department Board of Rights and a detailed method of supervision and control of city firemen, in which it is declared that the employee's right to position and compensation is a substantial property right of which he shall not be deprived other than for good and sufficient cause after hearing as provided therein; (5) although the charter provides that the city may, by ordinance, adopt any state statute, defendant has never adopted the Labor and Government Code sections in question; (6) by rules and regulations duly adopted under the charter provisions and ordinances enacted thereunder the Board of Fire Commissioners has provided certain administrative procedures which are incon-

must give way. The basic question to be determined is whether or not the matters embraced by the code sections are, when applied to the City of Los Angeles, exclusively municipal affairs. There can be no doubt that if the benefits and rights which those code sections purport to confer on all firefighters are actually a matter solely of municipal concern, then the constitutional provisions referred to would exclude defendant from their operation, and the defendant's charter provisions, ordinances and regulations would be paramount. On the other hand, the clear language of the constitutional provisions relied on by defendant herein deny to the state Legislature the right to interfere with a chartered city only with respect to matters which are exclusively municipal affairs.

In urging that the matters embraced in the code sections are of purely local concern, both the trial court and the defendant rely upon a number of authorities which, they contend, hold that all matters connected with public employment in a chartered city are municipal affairs (*Craig* v. *Superior Court,* 157 Cal. 481, 484-487 [108 P. 310]; *City of Pasadena* v. *Charleville,* 215 Cal. 384, 389 [10 P.2d 745]; *Adams* v. *Wolff,* 84 Cal.App.2d 435, 441 [190 P.2d 665]; *Young* v. *Board of Bldg. & Safety Comrs.,* 100 Cal.App.2d 468 [224 P.2d 16]). None of these cases, nor any other similar cases relied upon by defendant, hold that *all* matters connected with public employment in a chartered city are exclusively municipal affairs in which the state has no concern. Each deals with a specific phase of city employment, and each holds that the phase there under consideration is a municipal affair. For example, both *City of Pasadena* and *Adams* hold that the "hiring of employees generally" and "the hiring and paying of municipal employees" is generally a municipal affair. Neither denies the proposition that there may be other phases of public employment that are of state concern. Furthermore, many of the cited cases are not concerned with a conflict between municipal and state regulation, and thus, are not in point here. As an example, *Young* dealt solely with the right of Los Angeles to prohibit certain municipal employees from joining labor unions at a time prior to the enactment of any

sistent with and inimical to those code provisions (see principally sections 15 h through 15 *l, supra,* fn. 2); (7) the Board of Fire Commissioners has granted recognition to seven employee organizations (including Local 748) under the provisions of rule 15 k.

state legislation on the subject, and therefore did not even discuss the problem here involved.

Equally inapplicable are the many citations relied upon for the general proposition that regulations and ordinances enacted pursuant to a city charter are paramount to general state statutes (*Cunningham* v. *Hart*, 80 Cal.App.2d 902 [185 P.2d 75]; *Higgins* v. *Lynch*, 72 Cal.App.2d 526, 529 [164 P.2d 943]; *Pearson* v. *County of Los Angeles*, 49 Cal.2d 523, 535 [319 P.2d 624]; *Lossman* v. *City of Stockton*, 6 Cal.App. 2d 324, 332 [44 P.2d 397]; *Armas* v. *City of Oakland*, 135 Cal.App. 411, 420 [27 P.2d 666, 28 P.2d 422]; *Popper* v. *Broderick*, 123 Cal. 456 [56 P. 53]; *Murphy* v. *City of Piedmont*, 17 Cal.App.2d 569 [52 P.2d 614, 64 P.2d 399]; *Richards* v. *Wheeler*, 10 Cal.App.2d 108, 111 [51 P.2d 436]; *Klench* v. *Board of Pension Fund Comrs.*, 79 Cal.App. 171 [249 P. 56]; *Jackson* v. *Wilde*, 52 Cal.App. 259 [198 P. 822]; and *San Francisco* v. *Liverpool etc. Insurance Co.*, 74 Cal. 113 [15 P. 380, 5 Am.St.Rep. 425]). Not one of the cases cited is authority for the statement which they are supposed to support. Some actually hold that general state law is paramount to charter city ordinances in conflict therewith, while the balance may be distinguished on various grounds. Taken individually and as a whole, they hold only that the varied municipal functions referred to therein are municipal affairs. Those cases which deal with fire departments of a charter city go no further than holding that management and control of such department, in the general sense of that phrase, is a municipal affair. None go so far as to hold that matters of statewide concern do not take precedence over the home rule doctrine, even if they happen to impinge on some phase of management or control of the fire department of a chartered city. On the contrary, there are innumerable authorities holding that general law prevails over local enactments of a chartered city, even in regard to matters which would otherwise be deemed to be strictly municipal affairs, where the subject matter of the general law is of statewide concern. Such cases are not to be confused with those which turn on the principle of state preemption of the field,[11] al-

---

[11]The doctrine of state preemption becomes a determining factor only when a political subdivision (not necessarily a chartered city) attempts to legislate under its admitted police power (art. XI, § 11) on a subject that the state also has legislated upon. The question then arises as to whether the subject matter of the legislation has not been preempted by the state. The doctrine is not applicable to the claim that the state

though the two doctrines overlap. All hold the home rule doctrine of article XI of the Constitution to be inapplicable in regard to matters of statewide concern. Few deal with local fire departments, but all deal with matters of statewide concern in which general law has been held paramount to local regulation of municipal affairs.

In *Healy* v. *Industrial Acc. Com.*, 41 Cal.2d 118 [258 P.2d 1], this court reviewed an order of the commission that held that a section of the Los Angeles Charter (which provided that a police officer's pension payment must be offset against an IAC award) prevailed over the general industrial accident laws. Reversing that portion of the order, the Chief Justice said (at p. 122): "If, however, there is any conflict between charter provisions and the compensation sections of the Labor Code, the latter must prevail. . . . [T]he Legislature has established a complete system of workmen's compensation which obviously is a subject of state-wide concern, and it is well settled that in such matters the general law is paramount." Los Angeles cannot escape the implications of the quoted language simply because we are now dealing with its fire department rather than its police, or because the statewide system established by the Legislature regulates employer-employee relations rather than workmen's compensation.

Other authorities to the same effect are: *Cunningham* v. *Hart, supra*, 80 Cal.App.2d 902, holding general provisions of the Military and Veterans Code to prevail over the Civil Service regulations of the Oakland Fire Department; *City of Pasadena* v. *Charleville, supra*, 215 Cal. 384, holding the Public Works Alien Employment Act of 1931 to prevail over local ordinances regarding construction of city-owned works; *Eastlick* v. *City of Los Angeles*, 29 Cal.2d 661 [177 P.2d 558, 170 A.L.R. 225], holding that local charter provisions regarding the filing of claims must give way to the general laws enacted for the same purpose (see also *Douglass* v. *City of Los Angeles*, 5 Cal.2d 123 [53 P.2d 353], and *Wilkes* v. *City & County of San Francisco*, 44 Cal.App.2d 393 [112 P.2d 759], *in re* liability of municipalities); *Ex parte Daniels*, 183 Cal. 636 [192 P. 442, 21 A.L.R. 1172], *Mann* v. *Scott*, 180 Cal. 550 [182 P. 281], *In re Murphy*, 190 Cal. 286 [212 P. 30], *Atlas*

---

Legislature is prohibited (by the home rule provisions of the other sections of art. XI) from enacting legislation which will affect a chartered city. In the latter case, the sole question is whether or not the subject matter of the attempted legislation is exclusively a municipal affair.

*Mixed Mortar Co.* v. *City of Burbank,* 202 Cal. 660 [262 P. 334] and *Pipoly* v. *Benson,* 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515], all holding regulation of traffic on city streets to be a matter of statewide concern; *Nicholl* v. *Koster,* 157 Cal. 416 [108 P. 302], holding the Juvenile Court Law to be paramount in the appointment and salary of a probation officer paid from the city treasury; *In re Martinez,* 56 Cal.App.2d 473 [132 P.2d 901], *Southern California Roads Co.* v. *McGuire,* 2 Cal.2d 115 [39 P.2d 412], *People* v. *Willert,* 37 Cal. App.2d Supp. 729 [93 P.2d 872], and *Helmer* v. *Superior Court,* 48 Cal.App. 140 [191 P. 1001], all dealing with various phases of the use of public streets or the licensing of buses or taxicabs; *City of Sacramento* v. *Industrial Acc. Com.,* 74 Cal.App. 386 [240 P. 792], holding that a locally enacted pension system does not take precedence over the workmen's compensation laws; *City of Pasadena* v. *Chamberlain,* 204 Cal. 653 [269 P. 630], *Gadd* v. *McGuire,* 69 Cal.App. 347 [231 P. 754], *Farmer* v. *Behmer,* 9 Cal.App. 773 [100 P. 901], *Scott* v. *County of San Mateo,* 27 Cal.App. 708 [151 P. 33], and *Los Angeles Brewing Co.* v. *City of Los Angeles,* 8 Cal.App.2d 391 [48 P.2d 71], all dealing with various phases of municipal affairs held to be subject to general laws on the basis of statewide concern.

 Because the various sections of article XI fail to define municipal affairs, it becomes necessary for the courts to decide, under the facts of each case, whether the subject matter under discussion is of municipal or statewide concern. This question must be determined from the legislative purpose in each individual instance. In the instant case it would appear that the Legislature was attempting to deal with labor relations on a statewide basis. By enactment of Labor Code section 923 it adopted general policies and provided general rights and obligations of labor and management throughout the state. Because those provisions were not applicable in their entirety to all public employees, it enacted Government Code sections 3500-3509. Realizing that even that legislation could not apply in its entirety to certain types of public employees it provided therein for methods of exempting law enforcement officers from the provisions, and set forth slightly different legislation as applicable to firemen (Lab. Code, §§ 1960-1963). The total effect of all this legislation was not to deprive local government (chartered city or otherwise) of the right to manage and control its fire departments

but to create uniform fair labor practices throughout the state. As such, the legislation may impinge upon local control to a limited extent, but it is nonetheless a matter of state concern. Labor relations are of the same statewide concern as workmen's compensation, liability of municipalities for tort, perfecting and filing of claims, and the requirement to subscribe to loyalty oaths (see *Tolman* v. *Underhill,* 39 Cal.2d 708 [249 P.2d 280]), all of which have been held to be governed by general law in contravention of local regulation by chartered cities. This conclusion requires a reversal.

The judgment is reversed. On the cause of action for injunction (or mandate), inasmuch as it involves controverted questions of fact, the issues should be tried, if the parties so desire; on the declaratory relief cause of action the trial court is instructed to declare the rights and obligations of the parties in a manner consistent with the views herein expressed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Tobriner, J., and Peek, J., concurred.

Respondent's petition for a rehearing was denied September 11, 1963.